UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JULIAN L. WITENGIER and MARCELINE M. WITENGIER, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 4:16-CV-1855 (CEJ) |
| U.S. BANK N.A., et al., | ) ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the motion of defendant Antony Catlin to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). Plaintiffs have responded, and the issues are fully briefed.[1]

### I.    Background

On January 21, 2010, defendant U.S. Bank issued a loan to plaintiffs for the purchase of real property, secured by a note and deed of trust. The parties recorded the deed of trust with the St. Louis County Recorder of Deeds on February 2, 2010. Several years later, on August 1, 2014, the parties purportedly entered into a loan modification agreement.[2]

---

[1] The Court recognizes that plaintiffs filed a late, overlong response to the instant motion, without leave of Court. E.D. Mo. Loc. R. 4.01(B), (D). Because the Court finds that the tardy filing was unintentional and did not prejudice defendants, the Court will consider plaintiffs' arguments on the merits. *See Cannon v. SSM Health Care*, No. 4:14-CV-848 (CDP), 2014 WL 3600405, at *1 (E.D. Mo. July 22, 2014).

[2] Plaintiffs challenge the validity of the loan modification agreement on the ground that they did not receive an executed copy. [Doc. # 1-1 at 4]. Plaintiffs further contend that defendant U.S. Bank and defendant SouthLaw "purport[] to be the owner[s]" of plaintiffs' property "when they retain no interest whatsoever." [Doc. #24 at 13].

Defendants contend that plaintiffs defaulted on the loan, and plaintiffs do not dispute that claim.[3] [Doc. #17 at 1 n.1]. Plaintiffs allege that they contacted defendant Anthony Catlin, a U.S. Bank employee who was assigned to help them find a solution to their mortgage difficulties. However, Catlin did not help them but instead referred them to SouthLaw, P.C..

On September 14, 2016, defendant U.S. Bank appointed SouthLaw as the successor trustee under the deed of trust. [Doc. #15-1]. The Recorder of Deeds filed that instrument on September 21, 2016. *Id.* Defendants state that on September 26, 2016, SouthLaw sent notice to plaintiffs that a trustee's sale would take place on October 13, 2016. [Doc. #17 at 2; Doc. #15 at 1]. That notification also allegedly identified SouthLaw as the successor trustee.[4] [Doc. #17 at 2]. Plaintiffs successfully halted the foreclosure after filing for bankruptcy.[5] [Doc. #15 at 2].

Plaintiffs initiated this action *pro se* in the Twenty-First Judicial Circuit Court of Missouri (County of St. Louis) after the attempted foreclosure. *See* [Doc. #1-1]. Defendant U.S. Bank subsequently removed the action to this Court on the basis of diversity of citizenship jurisdiction, 28 U.S.C. § 1332. Plaintiffs are Missouri

---

[3] Plaintiffs do, however, summarily state that "[p]laintiffs are performing and have performed all they are obligated to perform under Exhibit 1, except those things which the [d]efendants, and each of them, are preventing [p]laintiffs from performing, including specifically reinstatement of the subject mortgage." [Doc. #1-1 at 7].

[4] "A successor trustee is a substituted trustee with only such powers as the deed of trust instrument gives him, and he becomes such only upon the happening of a contingency therein named." *Sparks v. PNC Bank*, 400 S.W.3d 454, 458 (Mo. Ct. App. 2013). Under the terms of the parties' deed of trust, U.S. Bank "at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded." [Doc. #15-2 at 14 ¶ 24].

[5] That case, *In re* Julian L. Witengier, No. 16-47386 (Bkrtcy. E.D. Mo. 2016) closed on November 15, 2016. [Doc. #15 at 2 n.1].

citizens and defendants U.S. Bank and Catlin are Ohio citizens.[6] In the complaint, plaintiffs assert claims of breach of contract and breach of the covenant of good faith and fair dealing. They also assert a quiet title claim.[7]

Plaintiffs base their claims on a number of alleged defects in the both the security instruments and the attempted foreclosure process. First, with regard to the security instruments, plaintiffs allege that (1) they did not receive an executed copy of the modified loan agreement, (2) Southlaw was not properly designated as the successor trustee,[8] and (3) U.S. Bank fraudulently assigned the note and concealed its "true" holder.[9] [Doc. #1-1 at 4, 10]. Plaintiffs additionally contend that defendants did not provide adequate notice of the trustee's sale. Specifically, defendants allegedly (1) directed notice to a "doe tenant," (2) sent notice fewer than twenty days before the scheduled foreclosure sale, and (3) did not record such notice in "official records." *Id.* at 4*; see* Mo. Rev. Stat. § 443.325. Furthermore, plaintiffs claim that upon inquiry, defendants did not provide a "single point of contact" and evaded plaintiffs' attempts to ascertain the reinstatement amount. *Id.* at 5–8.[10] Finally, plaintiffs summarily assert that U.S. Bank and Southlaw

---

[6] The complaint has been dismissed as to SouthLaw. Thus, its Missouri citizenship does not destroy diversity.

[7] The Court will not consider new claims asserted in plaintiffs' response to defendants' motions to dismiss. *See* [Doc. #24]. If the plaintiffs had intended to file an amended complaint, they could have done so, and the Court will not accept new allegations included by interlineation. *See* Fed. R. Civ. P. 15; *Bailey v. Bonne Tere Mental Health Manager*, No. 4:10-CV-1191 (JCH), 2010 WL 3938380, at *2 (E.D. Mo. Oct. 5, 2010).

[8] The aforementioned recorded document appointing defendant Southlaw as the successor trustee dispels plaintiffs' contention about the improper designation, and the Court need not address the allegation further. [Doc. #15-1].

[9] Plaintiffs also claims that MERs "fraudulently created, executed and recorded" the deed of trust. [Doc. #1-1 at 9]. MERs, however, is not a party to this action.

[10] The complaint also briefly cites to the Real Estate Settlement Procedures Act (RESPA) as a source of law. 12 U.S.C. §§ 2601, *et seq.* But plaintiffs fail to state anything more specific

perpetrated "a series of fraudulent transactions" by "modifying loan documents, manipulating property values and making loans that were in violation of a multiplicity of [s]tate laws." *Id.* at 9.[11]

Catlin seeks dismissal of this action against him for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). He also moves for dismissal for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).

## II.    Discussion

### A. Personal Jurisdiction

"To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must plead 'sufficient facts to support a reasonable inference that the defendant[] can be subjected to jurisdiction within the state.'" *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975 (8th Cir. 2015) (quoting *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591–92 (8th Cir. 2011)). The evidence must be viewed in a light most favorable to the plaintiff; however, the burden does not shift to the party challenging jurisdiction. *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014).

Personal jurisdiction can be specific or general. *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 593 (8th Cir. 2011). "Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state, while general jurisdiction refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose." *Miller v. Nippon Carbon Co., Ltd.*,

---

about how that federal statute applies to their case. *See* [Doc. #1-1 at 9].

[11] Plaintiffs also include arguments pertaining to defendant U.S. Bank's consent decree in an unrelated matter. *Id.* at 7.

528 F.3d 1087, 1091 (8th Cir. 2008) (alterations in original) (quoting *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 819 (8th Cir. 1994)).

"Specific personal jurisdiction can be exercised by a federal court in a diversity suit only if authorized by the forum state's long-arm statute and permitted by the Due Process Clause of the Fourteenth Amendment." *Fastpath, Inc.*, 760 F.3d at 820 (quoting *Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc.*, 702 F.3d 472, 475 (8th Cir. 2012) (internal quotation marks omitted)). Although some courts collapse the analysis, these inquiries are separate. *Dairy Farmers*, 702 F.3d at 475 (citing *Bryant v. Smith Interior Design Grp., Inc.*, 310 S.W.3d 227, 231–32 (Mo. 2010) (en banc) (analyzing the statutory and constitutional questions separately)). "The reach of a state long arm statute is a question of state law," while "the extent to which the reach of a long arm statute is limited by due process is a question of federal law." *Inst. Food Mktg. Assocs., Ltd. v. Golden State Strawberries, Inc.*, 747 F.2d 448, 455 (8th Cir. 1984).

Missouri's long-arm statute authorizes personal jurisdiction over defendants who, *inter alia,* transact business, make a contract, commit a tortious act, or own, use, or possess real estate within the state. Mo. Rev. Stat. § 506.500.1. The cause of action must arise out of the enumerated act in the statute. Mo. Rev. Stat. § 506.500.3. "In adopting the long-arm statute, the Missouri legislature 'intended to provide for jurisdiction, within the specific categories enumerated in the statutes . . . to the full extent permitted by the due process clause.'" *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 592 (8th Cir. 2011) (*quoting State ex rel. Metal Serv. Ctr. of Ga., Inc.  v. Gaertner*, 677 S.W.2d 325, 327 (Mo. 1984) (en banc)); *see also Dairy Farmers*, 702 F.3d at 475 (explaining that Missouri's long-arm

5

statute only reaches the limits of due process within the specific categories enumerated in the statute).

Plaintiffs do not address the issue of the propriety of exercising personal jurisdiction over defendant Catlin in their memorandum in opposition to the motion. *See* [Doc. #26]. However, because plaintiffs are *pro se*, the Court will search the complaint for facts that could provide a basis for assuming personal jurisdiction.

Plaintiffs do not allege that defendant Catlin is a party to any contract. Thus, the formation of a contract cannot provide for the exercise of jurisdiction over Catlin. *See Landstar Invs. II, Inc. v. Spears*, 257 S.W.3d 630 (Mo. Ct. App. 2008) ("it has long been a tenet of basic contract law that a contract generally binds no one but the parties thereto, and it cannot impose any contractual obligation or liability on one not a party to it" (internal quotation  marks and citation omitted)); *State ex rel. William Ranni Assocs., Inc. v. Hartenbach*, 742 S.W.2d 134, 140 (Mo. 1987) (en banc) ("an agent for a disclosed principal is not a party to a contract and is not liable for its nonperformance.").

Although Missouri courts construe "transaction of any business" broadly, an argument that defendant Catlin transacted business in Missouri would similarly fail. *Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc.*, 702 F.3d 472, 476 (8th Cir. 2012). A person or firm transacts business by visiting Missouri or sending its product or advertising here. *Id.* A single transaction may confer jurisdiction, if that is the transaction that gives rise to the suit. *Chromalloy Am. Corp. v. Elyria Foundry Co.*, 955 S.W.2d 1, 4 (Mo. 1997). But, "the use of mail or telephone communications to Missouri is not by itself the transaction of business." *Dairy Farmers*, 702 F.3d at 476–77. In the instant case, the plaintiffs have presented

evidence of several communications involving Catlin: an email dated October 7, 2016, and two phone calls from plaintiffs to Catlin seeking reinstatement figures. [Doc. #24 at 4–5]. These communications do not establish that defendant Catlin transacted business in Missouri. *See Gross & Janes Co. v. Jeff Neill Timberland Mgmt., Inc.*, No. 4:15-CV-1058 (JAR), 2016 WL 4665954, at *5 (E.D. Mo. Sept. 7, 2016) ("It is a defendant's contacts with the forum state that are of interest in determining if in personam jurisdiction exists, not its contacts with a resident" (internal quotations and citations omitted)).

Lastly, plaintiffs have not pled any facts that would establish any element of a tort. This is because "[a] party relying on a defendant's commission of a tort within this state to invoke long arm jurisdiction must make a prima facie showing of the validity of his claim," and plaintiffs have not asserted a cause of action for negligence. *Flooring Sys., Inc. v. Beaulieu Grp., LLC*, 187 F. Supp. 3d 1091, 1096 (E.D. Mo. 2016) (citing *State ex rel. William Ranni Assocs., Inc.*, 742 S.W.2d at 139).

Accordingly, the specifically enumerated acts required for the exercise of Missouri long-arm jurisdiction are not present here. Plaintiffs have failed to make a prima facie showing of personal jurisdiction over defendant Catlin. *See Digi-Tel Holdings, Inc. v. Proteq Telecomm. (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996).

Even if plaintiffs had established that an act under Missouri's long-arm statute was satisfied, assertion of jurisdiction over defendant Catlin would fail on due process grounds. Due process requires that the defendant purposefully establish "minimum contacts" in the forum state such that asserting personal jurisdiction over the defendant does not offend "traditional conceptions of fair play

and substantial justice." *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 592 (8th Cir. 2011) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 464, 474–477 (1985)). The defendant's "connection must be based on 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 980 (8th Cir. 2015) (quoting *Burger King*, 471 U.S. at 474–75). The purposeful availment requirement is met when the defendant's contacts with the forum are "more than 'random, fortuitous, or attenuated,' and must permit the defendant to 'reasonably anticipate being haled into court there.'" *Id.* at 980. Based on these principles, the Eighth Circuit has established five factors that must be considered in determining whether sufficient minimum contacts exist for personal jurisdiction:

> (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts; (3) the relationship of the cause of action to the contacts; (4) the interest of [the forum state] in providing a forum for its residents; and (5) the convenience or inconvenience to the parties." Although "the first three factors are primary factors, and the remaining two are secondary factors," we look at all of the factors and the totality of the circumstances in deciding whether personal jurisdiction exists.

*K-V Pharm. Co.*, 648 F.3d at 592-93 (alteration in original; citations omitted). Applying these factors, defendant Catlin's contacts with Missouri are not sufficient to establish personal jurisdiction. *See Gross & Janes Co. v. Jeff Neill Timberland Mgmt., Inc.*, No. 4:15-CV-1058 (JAR), 2016 WL 4665954, at *5 (E.D. Mo. Sept. 7, 2016) (citing *T.J. Raney & Sons, Inc. v. Sec. Sav. & Loan Ass'n*, 749 F.2d 523, 525 (8th Cir. 1984) (reasoning that phone conversation and written correspondence with plaintiffs, standing alone, was insufficient to satisfy the requirements of due process)).

If a court has general jurisdiction over a defendant, it can "adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose." *Miller v. Nippon Carbon Co., Ltd.*, 528 F.3d 1087, 1091 (8th Cir. 2008) (alterations in original) (quoting *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 819 (8th Cir. 1994)). As with specific jurisdiction, general jurisdiction may only be asserted insofar as it is authorized by state law and permitted by the Due Process Clause. *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 595 (8th Cir. 2011). A court in Missouri may exercise general jurisdiction over natural persons who are domiciled in the state. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile"). Defendant Catlin is not a domiciliary of Missouri. Accordingly, general personal jurisdiction cannot be exercised over him.

Because the Court cannot exercise personal jurisdiction over defendant Catlin, it need not address his 12(b)(6) arguments.

**\*\*\*\***

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the motion of defendant Antony Catlin to dismiss for lack of jurisdiction [Doc. #18] is **granted.**

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 21st day of April, 2017.